This video was made in Cooperation with Shiba Inu Community at Shiba Inu Community Center in Kansai, Japan.  Next case is Personalized Media Communications v. Amazon, 2016-2606. Mr. Schreiner. May it please be in the Court. My name is Stephen Schreiner. I'm here from the contractor on behalf of the patent owner, Personalized Media Communications. This case involves a denial, a board's denial of a motion to amend on the basis that the patent holder had not demonstrated the substitute claims to be patentable. This Court should reverse that decision for any of three reasons. First, the board was then operating in a pre-Aqua Products environment. So throughout the board's decision, the burden was imposed on the patent holder to demonstrate the patentability of the claims. We know now under Personal to Aqua Products that what must be shown is that to decline to enter the claims is that the claims are not obvious. Mr. Schreiner, I've found that when someone comes out with a first argument based on procedure, it sort of indicates that they're weak on the merits. Didn't the board adequately find that the references indicated that the substitute claims would not have been non-obvious? No, the board did not. Even setting Aqua Products aside, the board made significant errors of law that led to the wrong conclusion. First and foremost, the board failed to consider the substitute claim as a whole. The substitute claim has 11 steps. In analyzing the substitute claim, the board only looked at the new limitations. The board only looked at the new limitations and applied some new art. The board never looked at the substitute claim as a whole, nor did the board ever look at the prior art combination as a whole. That is an error of law. Even if you were to disregard that and just focus on the new limitations in the substitute claim and look at the new art that was applied to the substitute claim, which is two references, the board failed to establish a motivation to combine those two new references. PMC raised this issue in a request for a hearing to give the board an opportunity to clarify the record and to resolve that error. The board came back and simply responded that the two new references collectively disclosed the pieces of the new limitations in the claim. The board did not make any showing, provided no explanation as to why these two new references would be combined. When you were arguing for the patentability of the new claims, did you argue to the board that somehow these new features made the claims patentable when combined with the old features? Or did you limit yourself to the fact that you had new features which rendered it patentable? If I understand Your Honor's question, PMC, in our motion to amend papers, we primarily focused on the new limitations and the new prior art. That's the problem. So if you focused on the new limitations and the new prior art, now you come up here and complain that they didn't consider the new limitations in connection with the original claim limitations. It seems a bit unfair, doesn't it? Let me correct myself. The patent owner did address the full four-part combination of art that was applied to the substitute claims. In connection with the motion for leave to amend? Yes, sir. Could you show me where you did that? If we look at the request for rehearing, it's this appendix 827 through 80. Request for rehearing? Yes, this is before. I'm referring to a request for rehearing that PMC. Indeed briefs here? I'm talking about originally, before the rehearing request. Did you make this argument to the board? Yes. Could you show me where you did that? Rehearing is a little late to make the argument. Yes, for example, in the final written decision, I refer the court to appendix 15 through 16. PMC explained, with support from its expert declaration, why there would be no reason to combine these four different references. And PMC's expert explained without getting into it. You're asking me to look at the decision of the board? Yes. So 15 through 16, that's not the motion for leave to amend. I'm asking you something very specific. You've come here and you say, well, it isn't just the new claim elements that were in the amended claims. It's that the combination of those with the original elements makes this patentable. I just want to see where you argued that to the board before the rehearing. OK, so on page 15, this is appendix 15 of the final written decision. The board acknowledges that the patent owner had made the argument that these references could not be combined without substantial modification, including replacement or reconfiguration of many of the components. So this was an argument that... But this isn't about the amended claims. This is about the original claims. With the burden being on the petitioner to demonstrate... No, the burden of proof is on the petitioner. The burden of production is on you with respect to the amendments. You can't just say that the board has to come up with every possible argument and consider it. They consider the arguments that you make to them. And the question is, did you make the argument to them that you are coming here and making today? I believe we made the argument to the board about the full claim, that the entirety of the substitute claim needed to be considered. And we, PMC, addressed the full prior art combination. But even if one were to set that aside and say, for example, it's not reasonable to ask the board to, after rejecting, finding the original claims unpatentable, to rehash its reasoning when it gets to the substitute claims. But the original claims were found not patent eligible under 101. Why wouldn't the same be true with respect to the substitute claims? Because the new limitations are only related to transmission of information, other abstractions. In this, for the substitute claims, the decision from the Delaware District Court that was affirmed by this court does not present an identical issue of patentability under Section 101. You agree that the board has to consider and rule on 101 in connection with the motion for leave to amend, even though, in considering the original claims, 101 is not a relevant grant, right? Could you repeat the question, please? In addressing the motion for leave to amend, the board is obligated to consider 101 in addition to 103 and 102, correct? I agree that Section 101, if it is deemed an issue, should be considered by the board. The board didn't consider that issue in connection with the substitute claims. They didn't even take it up. There is not a single finding by the board on the question of 101. But it was argued by both sides. I'm sorry? It was argued by both sides. It was addressed in both sides' papers in connection with the motion to amend, but no findings were made. And furthermore, the issue of collateral estoppel that Your Honor raised, it doesn't apply. The collateral estoppel applies to the original claim 2, which is this court's decision. It's certainly binding on claim 2. I think I used the term collateral estoppel. I was asking about the patent eligibility of the new claims. The patent eligibility of the new claims was not addressed whatsoever below. But that's not the question. The question is, if your amendments, even though they're different claims than what we considered before, are still patent ineligible, because all they add is more things about sending and receiving data, which we clearly found ineligible before, why aren't the amended claims also ineligible? With all due respect, the premise that the new limitations are routine and conventional under Step 2 of the Alice inquiry has not been demonstrated. And, in fact, these limitations that are added to the new claims are not conventional and routine. Would they describe- I think you admitted that auto-tuning was well known. Absolutely. That's absolutely incorrect. The new limitation provides that in response to a user reply, a user input, that is going to trigger the processing of a signal that is transmitted. And then that will effectuate a channel change. But the whole thing is triggered by a user reply, a local user reply. Auto-tuning is a prior art concept just involving the central station sending a signal to control the receiver station to change channels. Well, I'm looking at page 31 of your blue brief. And you say, PMC acknowledged that forced tuning initiated by a central facility was known in the arts. So you agreed that auto-tuning generally was well known. But as I understand it, what you're saying is that a bottoms-up approach was not well known. That's correct. Is that a fair statement? That is a fair statement. PMC raised that issue, re-raised the issue in its request for re-hearing, and made the point that what the board called auto-tuning was top-down channel changing. In other words, you've got a remote head-end or central computer that sends down an instruction that causes the receiver station to change channels. What we're talking about here... But it does so in response to a user input, right? No, sir. Not in the prior art? That is not in the prior art. Amazon and the board cited some sections in the prior art. And when you go to those sections, you see that those two things, a user input and then the processing of a message to effectuate a channel change, are different features, different functions in the prior art. And the problem is we look at the claim limitation as a whole. We look at Claim 56, and it refers to processing, receiving a message over a first communication channel responsive to said user reply, and then going on to process that to change channels. Counsel, you're into your rebuttal time. You can continue or save it. Can I ask one other question? Yes, sir. Suppose we were to reject your distinction between top-down and bottom-up. Then you lose on the one-on-one issue? No. I believe that as we set forth in our papers, the board still erred in failing to, for example, establish a motivation to combine. There's two new references, Campbell and Furukawa. That's the 103 issue. I'm talking about 101. Oh, on 101. On 101, PMC has submitted expert evidence in support of the 101 issue and explaining that this limitation, and we're talking about a circa 1987 time frame, that this bottom-up limitation was not. No, no, no. You're not accepting my hypothetical. My hypothetical is we reject any distinction between bottom-up and top-down. Then you lose on the one-on-one issue, right? If this court deems that the substitute claim, 56, is coextensive with the original claim, 2, that was deemed to be ineligible by the district court, then I think that is the logical outcome. Thank you, counsel. Thank you. Sir, item. Good morning. May it please the court. I think the discussion here is exactly on point. The question here is what did they argue in their motion to amend as a basis for the patentability of the substitute claims? What they argued in their motion to amend was that auto-tuning was not known, that it was not obvious, and there would have been no motivation to use auto-tuning generally, just the idea of receiving a signal and having it change channels. In opposition to that motion, Amazon explained that auto-tuning was widely known, that auto-tuning in response to user reply was known, and that there was a motivation to combine. Amazon submitted a 75-page declaration from its expert just on the substitute claims. With claim charts addressing all of those issues and specific combinations of prior art references. The important part is that in PMC's reply on that motion to amend, it did not dispute that auto-tuning was known. It did not dispute that auto-tuning in response to user reply was known, and it did not dispute that there was a motivation to combine. But it went even further than that. It said that the one reference that Amazon relied on for auto-tuning in response to user reply, which is the Hartung reference, PMC represented to the board that that reference was merely cumulative of the other auto-tuning references. And the board accepted that representation and cited it in its decision at page 37 of the appendix. So the one reference that most clearly disclosed auto-tuning in response to user reply, they said was just cumulative of all the other auto-tuning art. And so they can't fault the board. Where in the board's decision does it affirmatively find a motivation to combine? The motivation to combine spans a few pages, 36 to 38 of the board's decision. And that discussion is where the board rejects their arguments as to no motivation to combine. Right. I mean, I get that it's a little problematic for me post-ACWA that their affirmative finding is just a rejection of your friend's arguments because that seems to be operating under the old standard, which no longer exists. It seems like there needs to be something more affirmative that the board makes its own finding that under the preponderant standard there is motivation to combine rather than a lack of evidence that there is no motivation to combine. Yeah, and the board specifically in its decision said that it was crediting the testimony of Amazon's expert. And Amazon's experts specifically addressed the motivation to combine, and that's in the appendix at 5917, paragraph 152 of the Weschelberger Declaration. He's talking about specific combinations of prior art references and explaining what the motivation to combine would have been. And one of them was convenience. Obviously, this is taking a process where people used to have to change channels and just doing it automatically. So one of the motivations to implement this is the convenience factor. It does it automatically. But he also goes on and provides a few other reasons as to why a person of skill in art would have been motivated, increasing security and some other issues. And the board accepted that and specifically stated that it was crediting his testimony and rejecting PMC's expert's testimony because PMC's expert had just given general motivation to combine arguments based on his theory that autotuning was new. And so PMC had argued that just autotuning generally was not known. And so when the board doesn't address explicitly the in response to user reply argument, it's because they never raised it. They raised it for the first time in their request for rehearing. With respect to the section 101 argument, the court has already decided 95% of the 101 issue. The only question remaining is did the new limitations that were added in the substitute claims change the 101 analysis in any way? And it can't. The original claims were directed to the abstract idea of promoting programming and delivering it over a generic network. All they've done now is say that that programming is being received on a separate channel. It doesn't make the claim any less abstract. Under step two, these new limits... Is there any legal impediment under Chenery to us affirming on the 101 basis? No. There's a decision after Chenery. It's Inouye Kaminsky, which is at 554 F3rd 967, where this court specifically addressed that issue and held that Chenery doesn't prevent this court from affirming a board decision on 101 as an alternative ground. Because 101 is generally a question of law. Correct. What do you do with our recent cases that suggest at least part of the 101 inquiry is fact-bound? So under step two, this court has said in recent cases that in some circumstances, at least, it's a factual question. And in particular, in some of those cases, they found where the patentee admits that it was well-known, that there can't be a factual issue here. So they submitted a declaration from their expert. But that can't supersede the admissions in the claim and the admissions they made about the prior art. The specification admits that the message that causes the auto-tuning was routine and conventional. The control signal that's embedded in the television signal, those were well-known. That's described in the specification in the appendix at page 911, column 43, lines 53 to 60. And the tuner that's being auto-tuned in this conventional manner is a conventional auto-tuner that's well-known in the art. That's what the specification states. That's in the appendix at 963, column 148, lines 28 to 40. And at 970, columns 162, lines 39 to 43. And not only did the specification admit it, but their expert admitted it in the deposition in the IPR. And this is in the appendix at 6691 to 92, where their expert agreed that what this patent is describing is off-the-shelf components with each component being used in a conventional manner. And the specification confirms that. In the embodiment that this claim is supposed to be about, it's just a TV program, it's a cooking show, it's promoting a recipe. It doesn't get any more abstract than that. I think this is a classic case of patent ineligibility. If there are no further questions, I'll cede the rest of the time to the court. Thank you, counsel. Mr. Schreiner has a couple minutes. We'll give you two minutes. Thank you, Your Honor. Two questions just raised. One relates to the Section 101 inquiry. Amazon did not make a showing under Step 2 of the Alice inquiry that these new limitations were routine, well-understood, and conventional. We know from the recent case law emanating from the Berkheimer decision, the Adriatrix software case, and there's one other unpublished decision, that the Step 2 inquiry is, at its core, a factual inquiry. Now, there may be instances where there is no dispute of material fact as to whether something, the operations recited in the claim, are routine, conventional, or well-understood. In this instance, Amazon, in its papers, simply plucked words from the claim. I'm referring to Amazon's brief at 58 through 59. Amazon looks at this substitute claim that has 11 limitations, and Amazon plucks the word receiving, processing, message. But Amazon never analyzes the claim limitation. They're just plucking words and then saying, well, this is well-known. The specification says that a receiver is well-known. What the case law mandates is an inquiry as to whether the operations specified by the claim are well-understood, routine, or conventional. Amazon has not shown that in its briefing here or below. PMC has explained in its briefing why the limitation, what we're calling the bottoms-up tuning feature, is not routine or conventional as of 1987, and that was supported by expert evidence below. So we respectfully submit that the 101 issue as to the substitute claims, which was not addressed by the board at all, should not be addressed by this court. On the second issue, the second issue involved the combination, this issue of auto-tuning. You might see your red light is on. Okay, very quickly, in Appendix 47 through 48, we have the board's decision on PMC's request for rehearing, where PMC specifically raised the issue of bottoms-up re-tuning, and that the prior art did not disclose that, and that there had been no showing of motivation. And this is the board's answer. The board's answer is, thus we concluded that the combination of Campbell and Furukawa teaches the limitation. The board didn't answer the question at hand, which was. Thank you, counsel. The red light is meaningful. Yes, sir. Thank you very much.